# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br>DON'S MAKING MONEY, LLP,<br>TROPICAL BEACHES, INC., NEW STRATEGIES, LLLP, DOLPHIN MEDIA, LLLP, NATIONAL REMINDER SERVICE, LLLP,<br><br>Debtors.<br>_____<br>CHARLES L. RILEY, JR., Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF JOSEPH A. DEIHL and SARI DEIHL; UNIVERSAL BUSINESS STRATEGIES, INC., an Arizona corporation; MAYOR PHARMACEUTICAL LABORATORIES, INC., an Arizona corporation; KAREMORE INTERNATIONAL, INC., a Nevada corporation; VITAMIST, INC., an Arizona corporation; LIBERTY GROUP INTERNATIONAL, LTD., an Arizona corporation; CREATIVE PERSONNEL RESOURCES, INC., an Arizona corporation; LEFT FIELD PRODUCTIONS, INC., an Arizona corporation; SPOILED BRAT, LTD., an Arizona corporation; JOHN and JANE DOES I-X; and ABC CORPORATIONS I-X,<br><br>Defendants.<br>_____ | In Chapter 7 proceedings<br><br>Case Nos. 99-07757 through<br>99-07761-PHX-CGC<br><br>(Jointly Administered)<br><br><br><br>Adversary No. 05-00881<br><br>UNDER ADVISEMENT DECISION RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND PLAINTIFF'S MOTION TO COMPEL DISCLOSURE AND MOTION FOR SANCTIONS |

**I. Introduction**

Before the Court is the Motion for Judgment on the Pleadings filed by the Estate of Joseph Deihl, Sari Deihl, Universal Business Strategies, Inc. ("UBS"), Regency Medical Group, Ltd. ("Regency"), Mayor Pharmaceutical Laboratories, Inc. ("Mayor"), Karemore International, Inc. ("Karemore"), Vitamist, Inc. ("Vitamist"), Liberty Group International, Ltd. ("Liberty"),

Creative Personnel Resources, Inc., Left Field Productions, Inc. ("Left Field"), and Spoiled Brat. Ltd. ("Spoiled Brat") (collectively "Defendants") and the Motion to Amend Complaint and the Renewed Motion for Sanctions filed by the Chapter 7 Trustee, Charles L. Riley. A hearing was held on May 11, 2007, and the matters taken under advisement.

**II. Facts**

On June 29, 1999, Debtor Don's Making Money filed for Chapter 11 relief. This bankruptcy was jointly administered with the bankruptcies of Tropical Beaches, Inc., New Strategies, LLLP, Dolphin Media, LLLP and National Reminder Services, LLLP (collectively "Debtors"). Two years later the case was converted to Chapter 7.

Defendants Joseph and Sari Deihl, husband and wife, owned and operated the various business entities named as defendants in this adversary. In mid-2001, Debtors, Debtors in Possession, and Regency, one of the Deihl entities, entered into a purchase agreement whereby Regency or its nominee agreed to purchase Debtor's infomercial business. This Court approved the sale, in which Regency paid $750,000 and agreed to pay an additional $2 million toward the claims of unsecured, nonpriority creditors. In exchange, the bankruptcy estates were given a secured interest in the Don's Making Money assets. Regency subsequently assigned its rights and obligations to UBS, a company the Deihls incorporated three days prior to the assignment from Regency. Joseph Deihl was the President and CEO of UBS and Sari Deihl its Secretary and Treasurer. After making the initial $750,000 payment, no other monies were paid by the Deihls, Regency, UBS or any other Deihl entity for the Don's Making Money assets. In addition, as part of the transfer from Debtor to UBS, Debtor's reserve account of $1,775,000 was transferred to UBS.

In July, 2002, UBS filed an adversary complaint against the Trustee, among others, seeking "Declaratory Judgment on Status of Contract Release and Declaratory Judgment Affirming Order that Assets Were Transferred to the Possession of the Buyer Free and Clear of All Liens, Claims, and Interests And Declaratory Judgment on Duty and Lack of Notice." The Trustee filed

2

an answer and counterclaim against UBS alleging four claims:

> First, the Trustee sought a declaratory judgment that the bankruptcy estates had a valid, perfected and unavoidable secured interest in the Don's Making Money Assets and that UBS was liable to the estates for $2 million on or about July 18, 2004. Second, the Trustee sought to recover $320,000 of the estates' cash and receivables that UBS had [allegedly] improperly appropriated since the Closing date. Third, the Trustee requested a declaratory judgment that certain real property located in or near Puerto Vallarta, Mexico had not been conveyed to UBS as part of the Purchase Agreement and Sale Order. And, lastly, the Trustee also sought declaratory relief regarding UBS's failure to pay post-petition consumer refund claims as it agreed to do . . . [in accordance with] the Sale Order.

UBS never responded, and this Court entered default judgment against UBS on all of the claims and awarded the estates $2,320,000, plus interest thereon at the federal legal rate pursuant to 28 U.S.C. section 1961. This default judgment has not been paid.

As a result, in November, 2005, the Chapter 7 Trustee brought this adversary against Defendants to collect on the above default judgment directly against the Deihls and their various other corporate entities. In this adversary, the Trustee alleges the following seven claims:

1. Alter Ego/Piercing the Corporate Veil (All Defendants);

2. Fraudulent Transfer pursuant to Arizona Revised Statute ("A.R.S.") section 44-1001 *et seq.* (All Defendants);

3. Common Law Fraud (the Deihls);

4. Negligent Misrepresentation (the Deihls);

5. Patter of Unlawful Activity pursuant to A.R.S. section 13-2314.04 (the Deihls, Regency, UBS, Mayor, and Karemor);

6. Violation of Corporate Trust Fund Doctrine (the Deihls); and

7. Unjust Enrichment (All Defendants).

The heart of the Trustee's allegations is that the Deihls, through the named corporate Defendants, amassed a personal fortune by making false promises to its consumers and vendors. According to the Trustee, the Deihls treated these various entities interchangeably and used them to engage in a pattern of unlawful activity. By way of example, the Trustee alleges that the Deihls, both individually and through their business entities, routinely incurred debts they had no intention of repaying, despite their promises to the contrary, and in fact never did repay, leaving the creditors

3

Case 2:05-ap-00881-CGC    Doc 79    Filed 09/24/07    Entered 09/24/07 13:53:23    Desc
Main Document    Page 3 of 13

with the difficult task of seeking collection or, more likely, settling for pennies on the dollar. This *modus operandi*, as the Trustee refers to it, was employed in the purchase of Debtor's assets by Regency. As evidence of this *modus operandi*, the Trustee points to numerous proceedings and/or lawsuits brought against the Deihls and their various business entities over the years for nonpayment, including a suit brought by the Arizona Attorney General's office for violating Arizona's Consumer Fraud Act.

At issue today is the Defendants motion for judgment on the pleadings, and the Trustee's related Motion to Amend and Motion to Compel and for Sanctions.

**III.	Analysis**

    **A.	Motion for Judgment on the Pleadings**

Defendants challenge the Trustee's ability to collect the UBS default judgment from all the Defendants named herein. Defendants seek judgment on the pleadings on all counts of the complaint but Count VI – Violation of the Corporate Trust Fund Doctrine brought solely against the Deihls.

        1. <u>Motion for Judgment on the Pleadings Standard</u>

The parties agree that the standard on a Rule 12(c) motion is the same as applied to Rule 12(b) motions: "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999). Courts will not dismiss complaints for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

        2. <u>Count I – Alter Ego</u>

With respect to Count I, Defendants argue that the Trustee cannot pierce the corporate veil of UBS to get at the other named corporate Defendants, as the other named corporate Defendants are not directors or shareholders of UBS. This Court agrees. An action to pierce the corporate veil allows a court to look past the corporate form and its protection and reach the shareholders

4

and directors of the corporation being pierced: "The doctrine of piercing the corporate veil applies only to plaintiffs who seek recovery against the personal assets of corporate shareholders or directors." *Leo Eisenberg & Co., Inc. v. Payson,* 162 Ariz. 529, 534, 785 P.2d 49, 54 (1989). By way of example, unless Regency, Vitamist or one of the other corporate Defendants is a shareholder or director of UBS, piercing UBS's corporate veil will not allow recovery against Regency, Vitamist or the other corporate Defendants *under this doctrine*.

However, this does not end the matter. A straight reading of Count I suggests that the Trustee is seeking only to pierce UBS's corporate veil to get to the Deihls, who are admittedly the shareholders and directors of UBS. While Count I's caption indicates in parenthesis that the Trustee is alleging this count against "All Defendants," a review of the substance of the claim is clearly to the contrary. At all times, the Trustee only alleges that the corporate formalities of UBS were ignored and that the Deihls "treated the affairs and obligations of UBS interchangeably with their own personal interests." The prayer for relief, moreover, specifically seeks "a declaratory judgment that *UBS is the alter ego of the Deihls*, and an order that the . . . UBS Judgment may be collected against the Deihls directly and/or against the assets of all other entities that the Deihls own and control." (Emphasis added). As stated earlier, piercing UBS's corporate veil will not enable the Trustee to collect against the other corporate Defendants, as there is no allegation they were shareholders or directors of UBS.

To add to the confusion, the Trustee in his response argues that he believes the Deihls were the alter egos "*for all of the Defendant-entities* and that those entities were also alter egos of each other." (Emphasis in the original). At the hearing, moreover, counsel for the Trustee indicated more precisely that his claim is that once he is able to establish the various fraudulent conveyance claims against each of these Defendants entities, he will then be able to pierce the corporate veils of each of these entities to get to the Deihls. These more precise allegations, however, are not what the complaint pleads. If the Trustee is intending to claim that the Deihls are the alter egos of all of the Defendant corporations, then the Trustee must specifically seek to pierce each entity's corporate veil to get to the Deihls. Further, the Trustee attempts to argue that because "the Deihls

5

own these [other] corporations, the assets of *each and every one of these corporations* is properly viewed as the equivalent of the assets of the Deihls. The Trustee's alter-ego claims against the non-UBS corporations exist separately from the alter ego claim against UBS." (Emphasis in the original). This argument is more properly described as a reverse piercing the corporate veil claim and is not pled in the Trustee's complaint.

For these reasons, the Court grants Defendants judgment on the pleadings with respect to all Defendants *but UBS* on Count I. However, this is without prejudice so that the Trustee may, if he so chooses, amend his complaint to allege an alter ego claim properly against the other corporate Defendants.

With respect to UBS, Defendants also argue that Arizona piercing the corporate veil law requires proof that a corporation was used for a fraudulent purpose. As a result, according to Defendants, an alter ego claim in Arizona is grounded in fraud and must therefore comply with Rule 9(b)'s requirements of particularity, something it claims the Trustee has failed to do. This Court disagrees. In Arizona, "alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day,* 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972). Recognition of corporateness is generally conditioned on two requirements: (1) business must be conducted in a corporate and not a personal basis; (2) the enterprise must be established on adequate financial basis." *Ize Nantan Bagowa, Ltd. v. Scalia,* 118 Ariz. 439, 442, 577 P.2d 725, 728 (App. 1978) (*citing* Henn, Law of Corporations 2nd Ed., § 147 (1970)).

While fraud is a *factor* in support of piercing the corporate veil, courts have indicated that it is not a *requirement* for such a claim: Observation of the corporate form must work an injustice *or* a fraud to allow piercing the corporate veil. *See Bagowa*, 118 Ariz. at 443, 577 P.2d at 729 ("However, in the absence of fraud or injustice to the aggrieved party, [undercapitalization] is not an absolute ground for disregarding a corporate entity."); *Dietel,* 16 Ariz. App. At 210, 492 P.2d at 459 ("[W]e are unable to find evidence of fraud, or mingling of funds or unity of interests of Dietel and Filmlab, Inc. such as to justify holding Dietel personally liable."). The Arizona Court

6

of Appeals, in fact, recognized the factors set forth in *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 26 Cal. Rptr. 806 (1963), for determining whether or not to pierce the corporate veil. In turn, the California appellate court expressly recognized that

> It should also be noted that, while the doctrine does not depend on the presence of actual fraud, it is designed to prevent what would be fraud or injustice, if accomplished. Accordingly, bad faith in one form or another is an underlying consideration and will be found in some form or another in those cases wherein the trial court was justified in disregarding the corporate entity.

210 Cal. App. 837, 26 Cal. Rptr. 803. However, as stated by the court in *Dietel*, "[i]f a corporation was formed or is employed for fraudulent purposes, then clearly the corporate fiction should be disregarded." *Id*. For this reason, judgment on the pleadings against UBS on Count I is denied.

### 3. Count II – Fraudulent Transfer

Defendants contend that the fraudulent transfer claim is extinguished under Arizona Revised Statute (A.R.S.) section 44-1009, which requires that constructive fraudulent transfer claims be brought within four years of the date the transfer was made and actual fraudulent transfer claims be brought within one year of the date the fraudulent transfer occurred or one year of the discovery of the transfer or one year of when the transfer should have been discovered through reasonable diligence. The Trustee filed this adversary proceeding on November 2, 2005; according to Defendants, therefore, any transactions occurring before November 2, 2001, are extinguished. In this case, Defendants point out that four transactions listed in Exhibit B to the Trustee's complaint occurred prior to November 2, 2001.[1]

While it may appear that the first four listed transactions fall outside the four year window set forth in A.R.S. section 44-1009, the Trustee makes clear in the complaint that Exhibit B is an incomplete list of transactions it believes are potentially fraudulent: "As discovery occurs,

---

[1] Defendants argue that there are four transfers to Regency Medical Research before November 2, 2001, that are extinguished by A.R.S. § 44-1009. The Court notes that while there are four transactions in Exhibit B dated earlier than November 2, 2001, only three are to Regency: One transfer dated prior to November 2, 2001, is to Windy City Properties. This discrepancy appears immaterial for purposes of the decision here.

additional transfers may be disclosed and added to this list, or removed from it." Further, dismissal of these four transactions does not eliminate this claim entirely. At best, it simply removes these four transactions from consideration. There are over forty other transfers listed in Exhibit B that fall within four year time period prior to the filing of this adversary complaint. Additionally, with respect to all of the transactions, it is still possible that these transfers fall within the one year discovery time period. At the complaint stage of these proceedings, that is a question that cannot be answered. Until a factual record has been created, judgment on the pleadings is inappropriate. For the same reasons, the Court denies Defendants' request that the Court dismiss Defendants Sari Deihl, Spoiled Brat, Karemor, and Liberty Group from Count II because, according to Defendants, no transfers to these entities are listed in Exhibit B. As the Trustee's complaint states, Exhibit B is simply a list to date of those transfers he has discovered and that he believes support a fraudulent transfer claim. The Trustee argues, in response, that he has attempted discovery on transfers involving these other Defendants, but has been denied any meaningful discovery by Defendants. This issue is the subject of the Trustee's Third Motion to Compel and Motion for Sanctions pending before this Court along with this motion for judgment on the pleadings.

Similarly, Defendants' argument that the Trustee has failed to identify in his complaint whether the fraudulent transfer claims are based on A.R.S. section 44-1004(A)(1), actual fraud, or 44-1004(A)(2), constructive fraud, is incorrect. A reading of the complaint indicates that the Trustee has pled both (A)(1) and (A)(2) elements in Count II, thereby putting Defendants on notice of such. As discovery is completed, these claims will necessarily be further clarified and solidified. At that time, the parties will have the opportunity to file motions for summary judgment if such relief is believed to be warranted.

For these reasons, Defendants' motion for judgment on the pleadings with respect to Count II is denied.

    4.    <u>Count III – Common Law Fraud</u>

Defendants argue that the Trustee's common law fraud claim has not been properly pled

8

under Arizona law, as no "time, place, and content of the allegedly fraudulent misrepresentation or omission, as well as the identity of the person allegedly perpetrating the fraud" has been disclosed. The Court disagrees. The Trustee has properly alleged the elements of a common law fraud claim as quoted by Defendants and under Arizona case law. The Trustee has indicated that a misrepresentation of material fact was made or a material fact omitted by the Deihls and/or their agents to Vern Schweigert and other interested parties, that the Estate reasonably relied on such misrepresentations and/or omissions and that damage resulted. Further, unlike the complaint in *Apache Oxy-Med, Inc. v. Humana Health Plan, Inc.,* 2006 WL 3742169, to which Defendants cite, the Trustee does set forth with sufficient particularity the time, place and content of the misrepresentations. In particular, the complaint states that there were "several telephonic conferences, meetings and or court hearings on or about July 9 - 11, 2001, in which the Deihls and/or their agents intentionally and/or negligently concealed and/or misrepresented to Vern Schweigert and to other interested parties involved in the negotiations that they only intended to pay $750,000 for the Don's Making Money assets." The allegations in *Apache* were far less specific and more conclusory. For example, with respect to any time reference, the plaintiff in *Apache* simply stated that the representations occurred "on many occasions" with nothing more. There was no description of where the alleged fraud occurred and what the actual fraud was. That is not this case. Judgment on the pleadings with respect to Count III is therefore denied

### 5. Count IV – Negligent Misrepresentation

With respect to the Trustee's negligent misrepresentation claim, Defendants make two arguments. First, Defendants point out that under Arizona law such a claim cannot be based on a promise of future conduct – in this case the promise to pay additional monies for Don's Making Money in the future.[2] Defendants are correct and the Trustee's counsel agreed at the hearing. As the Mississippi Supreme Court stated, in a case relied on by the Arizona Court of Appeals in *McAlister v. Citibank (Arizona),* 171 Ariz. 207, 215, 829 P.2d 1253 (App. 1992), "It is well

---

[2]For some unknown reason, the Trustee does not respond to either of these arguments.

9

settled law that, *except in cases of fraud*, the first element of the tort of negligent misrepresentation must involve a representation concerning a past or present *fact*." *Bank of Shaw, a Branch of Grenada Bank v. Posey,* 573 So.2d 1355, 1360 (Miss. 1990) (emphasis added). The promise at issue is the promise to make the future payments for the Don's Making Money assets. That is a promise of a future event that may support a fraud claim, but does not support a negligent misrepresentation claim.

Second, Defendants argue that the "economic loss rule" prohibits the Trustee from recovering economic damages in tort where there is no claim of physical harm, "either in the form of personal injury or secondary property damage." *See Carstens v. City of Phoenix,* 206 Ariz. 123, 126, 75 P.3d 1081. 1084 (App. 2003). A claim for negligent misrepresentation is a tort claim. *See Shaw,* 573 So.2d at 1360. The Trustee makes no allegation that there has been any physical or secondary property damage in this case. For these reasons, the Court grants Defendants judgment on Count IV, negligent misrepresentation.

### 6. Count V – Pattern of Unlawful Activity

In Count V, the Trustee brings a RICO claim against the Deihls, Regency, UBS, Mayor and Karemor pursuant to Arizona Revised Statute (A.R.S.) section 13-2314.04. Defendants contend that the claim is fundamentally flawed in that the pattern of alleged racketeering the Trustee relies upon is a series of, at best, breach of contract claims and, as such, are insufficient predicate acts upon which to base a RICO claim. In addition, Defendants make the same Rule 9(b) argument that the claim is not sufficiently pled. With respect to the Rule 9(b) argument, the Court denies it for the same reasons stated earlier with respect to the other fraud claims.

In support of their argument that breach of contract claims cannot qualify as predicate acts for purposes of RICO, Defendants cite to a case out of Nevada interpreting Nevada RICO law and there is no similar case law in Arizona. Nevertheless, a decision on this issue is not necessary because Defendants miss the point of the Trustee's claim. Simply because breach of contract claims may exist, dismissal is not automatically required. *See Magellen Real Estate Inv. Trust v. Losch,* 109 F. Supp. 2d 1144, 1162 (D.C. Ariz. 2000). The allegation is not simply that

10

Defendants breached a series of contracts: It is that Defendants engaged in a scheme of entering into contracts they had no intention of performing. Perhaps the distinction is a fine one, but for purpose of judgment on the pleadings, one that should allow the case to proceed.

Further, Defendants argue that this claim is an attempt by the Trustee to relitigate the earlier breach of contract claims and raise, for the first time now, allegations of fraud that should have been raised in those earlier cases. The Court disagrees. First, the Trustee was not and could not have been involved in those prior lawsuits, as they were brought by the parties to the contract and before this bankruptcy. Whether fraud was or was not alleged was not within the Trustee's control and he could not have been a party to those claims. Estoppel, therefore, does not apply.

Finally, Defendants contend the RICO action must be dismissed because there is no causal link alleged between the predicate act and the injury. Again, the Court disagrees. The predicate act alleged is the Deihls using Regency and UBS to enter into a contract that they, through these entities, had no intention of performing; thereafter, the non-performance would be the requisite causal link between the predicate act and the resulting damage, as required by *Rosier v. First Financial Corp.*, 181 Ariz. 218, 889 P.2d 11 (App. 1994). In *Rosier*, the plaintiffs did not contest that their losses from a failed limited partnership resulted from market forces, not the allegedly fraudulent statements in the offering memorandum circulated by the defendants. This case is different: *if* the Trustee can prove the Deihls, through Regency and UBS, entered into the contract with the specific intent not to pay the remainder of the purchase price and that this was part of continuing scheme or enterprise that they had used in other transactions, the Court cannot say at this stage of the proceedings that a RICO claim would not lie. Therefore, the motion as to Count VI will be denied.

### 7. Count VII – Unjust Enrichment

Last, Defendants seek judgment on the Trustee's unjust enrichment claim, arguing that an unjust enrichment claim cannot lie when a specific contract governs the parties' relationship. *See Trustmark Ins. Co. v. Bank One, Arizona, NA,* 202 Ariz. 535, 542, 48 P.3d 485, 492 (App. 2002). While Defendants are correct that an award for damages under the theory of unjust

11

Case 2:05-ap-00881-CGC    Doc 79    Filed 09/24/07    Entered 09/24/07 13:53:23    Desc
Main Document    Page 11 of 13

enrichment will not lie where another legal remedy exists, the Trustee has properly pled this claim in the alternative. Pleading unjust enrichment in the alternative is allowable under Arizona law. *See id*. Further, in this case, the estate only has a contractual relationship with UBS and not the other named corporate Defendants, so unjust enrichment may be the only remedy the Trustee has against those entities, a matter to be determined once a record has been established. Therefore, judgment is denied.

### B. Motion to Amend Complaint

Based on this Court's decision today on Defendants Motion for Judgment on the Pleadings, the Court grants the Trustee's Motion to Amend. For the reasons enumerated above, many of the Defendants' objections to the motion to amend are overruled. Further, the Court has expressly stated in its decision on the motion for judgment on the pleadings that the Trustee may have leave to amend Count I to more properly allege an alter ego claim against the non-UBS corporate Defendants. The amended complaint shall be filed within twenty days.

### C. Motion to Compel Disclosure and Motion for Sanctions

Finally, with respect to the motion to compel and for sanctions filed by the Trustee, the Court understands that the parties are working out the disclosure issue and will be providing the Trustee with what has been requested: "Now, her new counsel is working with Plaintiff's counsel to address all pending discovery issues and move this case along." Therefore, for the time being, the motion to compel is denied. If, however, the parties are unable to amicably resolve this issue, the denial of the motion to compel is without prejudice to being re-filed. In addition, the Court denies the Trustee's demand for sanctions against Defendants' new counsel. As all are aware, Defendants were originally represented by attorney David Rodgers, who has since been suspended from the practice of law. Any sanctions the Trustee may want to seek should be directed towards

him and not the Defendants or their new counsel at this point.

So ordered.

**DATED:** September 24, 2007

_____
CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Nicholas J. DiCarlo
James E. Phelps
DiCarlo Caserta & Phelps, PLLC
6750 E. Camelback Rd., Suite 100-A
Scottsdale, Arizona 85251
Attorneys for Defendants

Daniel P. Collins
Collins, May, Potenza, Baran & Gillespie, PC
2210 Chase Tower
201 N. Central Ave.
Phoenix, Arizona 85004
Attorneys for Trustee

Michael L. Green
Scott M. MacMillan
Green & Baker, Ltd.
7373 N. Scottsdale Rd., Suite C-226
Scottsdale, Arizona 85253
Special Counsel for Plaintiff Charles L. Riley, Jr.

Charles L. Riley, Jr.
Trustee
P.O. Box 6640
Chandler, Arizona 85246

13